1  WATERS KRAUS & PAUL LLP
   INGRID M. EVANS (179094)
2  ievans@waterskraus.com
   DAVID L. CHENG (240926)
3  dcheng@waterskraus.com
   601 Van Ness Avenue, Suite 2080
4  San Francisco, CA 94102
   Telephone: 415/296-6060
5  214/777-0470 (fax)

6  BONNETT, FAIRBOURN, FRIEDMAN &
   BALINT P.C.
7  ANDREW S. FRIEDMAN (*Pro Hac Vice*
   application to be submitted)
8  afriedman@bffb.com
   2901 N. Central Avenue, Suite 1000
9  Phoenix, AZ 85012
   Telephone: 602/274-1100
10 602/274-1199 (fax)

11 Attorneys for Plaintiff

12 [*additional counsel located on Signature Page*]

WATERS KRAUS & PAUL LLP
CHARLES S. SIEGEL (*Pro Hac Vice*
*application to be submitted*)
csiegel@waterskraus.com
3219 McKinney Avenue
Dallas, TX 75204
Telephone: 214/357-6244
214/357-7252 (fax)

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16 DAPHNE P. RAND, by and through DEBRA J.       Case No. **CV 09      0639**
   DOLCH, as Conservator of the Person and
17 Estate of DAPHNE P. RAND, Conservatee, on )   CLASS ACTION COMPLAINT FOR:
   Behalf of Themselves and All Others Similarly )
18 Situated.                                     )   **CLASS ACTION**
                                                 )
19              Plaintiff,                       )   1.  Violations of Cal. Bus. & Prof. Code
                                                 )       §17200 *et seq.*
20        vs.                                    )   2.  Violations of Cal. Bus. & Prof. Code
                                                 )       §17500 *et seq.*
21 AMERICAN NATIONAL INSURANCE                   )   3.  Violations of Financial Elder Abuse, Welf.
22 COMPANY, a Texas corporation.                 )       & Inst. Code §15600 *et seq.*
                                                 )
23                                               )   DEMAND FOR JURY TRIAL
                                                 )
24              Defendant.                       )
                                                 )
25 _____ )

26        1.      Plaintiff Daphne P. Rand ("Plaintiff" or "Ms. Rand"), by and through Debra J. Dolch,

27 as Conservator of the Person and Estate of Daphne P. Rand, Conservatee, brings this class action

28 complaint against American National Insurance Company ("American National" or "Defendant") on

                                           - 1 -

1 | behalf of themselves and all other similarly situated persons. Upon information and belief, as well
2 | as the investigation of counsel, Plaintiff alleges as follows:

3 | **INTRODUCTION**

4 | 2. Plaintiff Daphne Rand brings this California state-wide class action on behalf of
5 | herself and other similarly situated consumers to halt and remedy the harm caused by Defendant
6 | American National Insurance Company's systematic unfair, deceptive and unlawful sales practices
7 | in connection with the solicitation, offering and sale of deferred annuity products ("deferred
8 | annuities"), excluding variable annuities, to all purchasers in California. Defendant formulated and
9 | implemented a deceptive scheme to systematically market and sell fixed and equity indexed
10 | deferred annuities, in part, by omitting or failing to fully disclose all material facts and risks
11 | associated with the deferred annuity products.

12 | 3. Defendant's scheme targets consumers like Plaintiff as prospective purchasers of
13 | deferred annuities even though they are unlikely to receive any benefit from the annuity because of
14 | the long-term nature of deferred annuity products, maturity dates (*i.e.*, the date on which income
15 | payments will begin), in addition to high surrender charges and penalties for early withdrawal and/or
16 | illusory bonus features, rates and other product features which do not benefit annuity purchasers. By
17 | and through their network of sales and marketing agents, Defendant trains and encourages agents to
18 | market and sell its deferred annuity products using American National marketing materials,
19 | brochures and presentations, encouraging consumers to consolidate their savings and other
20 | investments into Defendant's deferred annuities. On the other hand, American National's uniform
21 | marketing materials, brochures and presentations omit or fail to fully disclose all material facts and
22 | risks associated with the deferred annuity products, including, but not limited to, that the
23 | products: tie up their money for up to 10 years or more; that the products carry exorbitant "surrender
24 | charges;" and that the products subject policyholders to undisclosed tax penalties and create
25 | complicated estate problems for their loved ones after their death.

26 | 4. Plaintiff brings this class action on behalf of herself and all other persons (or their
27 | beneficiaries) who were issued one or more American National deferred annuity policies in the State
28 |

1  of California, or who, within the applicable statute of limitations, purchased or surrendered one or

2  more American National deferred annuity policies ("the Class" or "Class Members").

3      5.    Plaintiff alleges that Defendant's deferred annuity sales practices described herein

4  violate Cal. Bus. & Prof. Code §§ 17200, *et seq.* and Cal. Bus. & Prof. Code §§ 17500, *et seq.*

5  Plaintiff also alleges that Defendant's sales practices violate Cal. Welf. & Inst. Code §§ 15600, *et*

6  *seq.* Through this action, Plaintiff does assert any claims based on fraud, nor does she ground any of

7  her current claims on fraud.

8      6.    This action seeks to enjoin Defendant from engaging in their illegal and

9  unconscionable sales practices, including the form and substance of their disclosures regarding the

10  drawbacks of deferred annuities. It also seeks to compensate the victims of Defendant's scheme and

11  penalize Defendant for its wrongful practices.

12  **JURISDICTION AND VENUE**

13      7.    This Court has original jurisdiction over the subject matter of this action pursuant to

14  28 U.S.C. §1332. The Court has supplemental jurisdiction over the state law claims pursuant to 28

15  U.S.C. §1367. The amount in controversy exceeds $75,000 for each plaintiff, exclusive of costs and

16  interest. Furthermore, the aggregate amount in controversy for this class action exceeds $5,000,000,

17  and all members of the proposed Class are citizens of a State different from Defendant. *See* Class

18  Action Fairness Act ("CAFA"), 28 U.S.C. §1711.

19      8.    Plaintiff files this class action pursuant to Rule 23 of the Federal Rules of Civil

20  Procedure ("F.R.C.P."). Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a

21  substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

22  **PARTIES**

23      9.    At all relevant times herein, Plaintiff Daphne Rand is and/or was an 86-year-old

24  resident of the City and County of San Francisco, California, and is an "elder" within the meaning of

25  California Welfare and Institutions Code §15610.27.

26      10.    On or about August 11, 2006, the San Francisco Superior Court (Case No. PCN-06-

27  289016) appointed Debra J. Dolch to act as temporary conservator of the estate and person of

28

1 | Plaintiff. On November 9, 2006, Debra J. Dolch was appointed permanent conservator, and the
2 | Letter of Conservatorship was approved on November 9, 2006.

3 |     11. On February 11, the San Francisco Superior Court issued an order permitting Debra J.
4 | Dolch, as conservator for Plaintiff, to bring suit against Defendant in this action.

5 |     12. Defendant American National is a Texas corporation headquartered in Galveston, TX
6 | that is licensed to transact insurance in 50 states, the District of Columbia, Puerto Rico and
7 | American Samoa, and, as of September 30, 2008, had assets totaling nearly $18.8 billion.

8 |     13. Directly and through subsidiaries, American National offers a broad line of insurance
9 | products and services, including life insurance, annuities, health insurance, property and casualty,
10 | credit insurance, and pension plan services.

11 |     14. At all times mentioned in the causes of action alleged herein, each and every
12 | Defendant was an agent and/or employee of each and every other Defendant. In doing the things
13 | alleged in the causes of action stated herein, each and every Defendant was acting within the course
14 | and scope of this agency or employment and was acting with the consent, permission and
15 | authorization of each of the remaining Defendants. All actions of each Defendant, as alleged in the
16 | causes of action stated herein, were ratified and approved by every other Defendant or its officers or
17 | managing agents.

18 |     15. Whenever reference in this Complaint is made to any act of any Defendant named
19 | herein or other corporate Defendant as may be named in the future course of this action, such
20 | allegation shall be deemed to mean that the officers, directors, agents, subsidiaries, affiliates and
21 | employees of said Defendant did or authorized such act while actively engaged in the management,
22 | direction, or control of affairs of the corporate Defendant, and while acting within the course and
23 | scope of their employment.

24 | **FACTUAL ALLEGATIONS**

25 | **Deferred Annuity Policies**

26 |     16. An annuity is a contract between an annuitant and an insurance company pursuant to
27 | which the annuitant makes an upfront lump-sum payment or a series of payments to the insurance
28 | company. The insurance company, in turn, agrees to make payments to the annuitant over a period

1  of time. With a standard or "immediate" annuity, the consumer has a right to a stream of income via

2  payments from the insurance company that is usually guaranteed to last for as long as the consumer

3  is alive.

4      17.    With a deferred annuity, the annuitant foregoes payment until some point in the

5  future. During this deferral period, the earnings on the annuitant's premium payments grow, tax-

6  deferred. Thus, deferred annuities are very different from immediate annuities and provide a long-

7  term investment vehicle, not an immediate income stream and effectively lock up the purchaser's

8  money for lengthy periods, typically up to 10 years or more. The annuities at issue in this Complaint

9  are deferred annuities (specifically, "fixed" deferred and "equity indexed" deferred annuities).

10     18.    There are at least two kinds of deferred annuities: a "fixed" deferred annuity and an

11 "equity indexed" deferred annuity, both of which by their very nature and design, are highly

12 complex investment products.

13         (a)    A "fixed" annuity is an annuity in which the insurance company offers a

14 guaranteed interest rate for a set period of time on the annuitant's premium payments.

15         (b)    An "equity indexed" annuity is an annuity in which the rate of interest the

16 company provides to the policyholder fluctuates depending upon the performance of a stock market

17 index, such as the S&P 500.[1] In short, equity indexed annuities are complex derivative products that

18 lend themselves to abusive sales practices directed toward consumers.

19     19.    With a deferred annuity, the annuitant cannot withdraw their investment or the earned

20 interest without penalty for a number of years after the initial payment of the premium. The penalty

21 for early withdrawal of either the principal or earnings is called a "surrender charge." The

22 percentage of the surrender charge, which typically start as high as 9-10%, declines after a period of

23 five to eight years, and diminishes further with each passing year for a specified number of years.

24 The surrender charge is often a hefty penalty to discourage early withdrawal of principal from an

25

26 [1]   The "S&P 500" is the Standard & Poor's 500 index, which is a capitalization-weighted index
   of 500 stocks. Considered to be a benchmark of the overall stock market, this index is comprised of
27 500 widely-held Blue Chip stocks representing industrial, transportation, utility and financial
   companies with a heavy emphasis in industrials. The S&P 500 index is commonly used to measure
28 stock market performance.

1  annuity. As a result, the terms of deferred annuities severely limit consumers' access to their funds
2  until American National has fully recouped its high agent commission payments.

3      20.     Under California Insurance Code §1631, only licensed insurance agents may solicit,
4  offer and sell deferred annuities. This licensing requirement guarantees that consumers receive
5  appropriate guidance when purchasing a deferred annuity and a level of integrity and accountability.
6  It also attempts to guarantee that only persons who are required to refrain from misleading the
7  vulnerable consumer will sell these complex products because the agent is subject to regulations and
8  legal duties requiring him or her to disclose all facts and information within his or her knowledge
9  regarding a marketed insurance product which may be "material" to a prospective annuitant's
10 decision to purchase such products. *See, e.g.*, Cal. Ins. Code §§330, 331, 332, 334.

11 **Defendant's Marketing and Sale of Deferred Annuity Policies**

12     21.     Defendant American National markets and sells its deferred annuity products
13 primarily through its network of third-party and/or employed individual sales agents, marketing
14 organizations, and/or brokerage firms. According to American National's 2007 Annual Report, the
15 Company uses four principal distribution channels to effectuate the sale of its deferred annuities: the
16 Independent Marketing Group, the Multiple Line Division, the Career Sales & Service Division, and
17 the Senior Age Marketing (collectively referred to herein as "Agents").

18     22.     Defendant, through its headquarters in Texas, prepares, disseminates and approves
19 standardized information, brochures, illustrations, marketing and sales materials to Agents for
20 effectuating the sale of deferred annuities. However, American National's standardized information,
21 brochures, illustrations, marketing and sales materials systematically omit or fail to disclose that
22 such annuities are inappropriate investments for consumers, while failing to adequately disclose or
23 downplaying the substantial risks, drawbacks and other adverse features inherent in deferred annuity
24 products, including their long-term nature, illusory bonus provisions, riders and massive surrender
25 charges.

26     23.     In addition, American National fail to disclose the full extent of their business
27 relationships with Agents, commissions and other incentives to push Defendant's deferred annuity
28

products on consumers, and therefore Plaintiff and the Class are unaware of the conflict of interest created by these relationships.

**Defendant's Omissions and Non-Disclosures Regarding Their Deferred Annuity Policies**

24. Defendant continues to solicit, market, issue, sell and underwrite deferred annuity policies to consumers, including Plaintiff and the Class. Unbeknownst to Plaintiff and the Class, Defendant offers lucrative sales incentives, commissions, perks and other promotions to its Agents for selling its deferred annuity products. Defendant, in turn, receives immense profits and maintains or increases its market share from the sale of deferred annuities.

25. Defendant knows that their business practices and Affiliated Agents' marketing practices are illegal, unfair and deceptive, and that the deferred annuities they market and sell contain numerous disadvantages for consumers. Nonetheless, Defendant has continued to promote and sell deferred annuities to consumers through its Agents.

26. Defendant's marketing materials are designed to appeal to consumers and prey on their fears of risky or insecure investments. Defendant's customer brochures advertising Amerinan National deferred annuity products, however, are misleading. Defendant's marketing materials deceptively promote product features purportedly providing security of principal, wealth accumulation through generous returns, liquidity and other attributes without disclosing the material facts from which a consumer would discern that the American National deferred annuities in reality are illiquid, poorly performing products that carry substantial principal and market risk.

27. In addition to surrender penalties, tax disadvantages and other adverse features, Defendant fails to disclose numerous additional material facts making the deferred annuities extremely disadvantageous for consumers, including hidden charges and penalties associated with annuitization options, the use of teaser rates, illusory bonus features, participation rates and caps to artificially enhance the represented performance of the annuities, the excessive commissions and other payments made to induce Agents to sell Defendant's annuity products and/or similar material facts.

28. Agents have agreements with Defendant to sell its deferred annuities and are required to adhere to the sales procedures, protocols and materials dictated, prepared and/or approved by

1  Defendant. These sales protocols and procedures include the use of standard annuity marketing
2  materials, product guides, agent-use-only materials, illustrations, and form contracts created and/or
3  authorized by Defendant.

4      29.    Defendant pays its Agents bonuses and high commissions for selling deferred
5  annuities. By doing so, Defendant induces, condones and encourages its Agents to engage in
6  aggressive and predatory marketing tactics. For example, Defendant and Agents persuade
7  consumers, such as Plaintiff and the Class, to steer, convert or liquidate other savings or retirement
8  investments to purchase Defendant's annuities, often resulting in surrender charges incurred for
9  accessing money after purchasing Defendant's deferred annuity products.

10     30.    Defendant engages in various illegal, unfair and deceptive sales practices designed to
11  mislead consumers regarding the purported benefits and advantages of deferred annuities as
12  compared to other forms of investments, but omits or fails to disclose the disadvantages of
13  purchasing a deferred annuity. Defendant's marketing materials are misleading by not adequately
14  disclosing the hefty surrender charges that remain in effect for the first 9 -10 years of the annuity, by
15  not adequately disclosing that the lengthy maturity date, and by failing to disclose a host of adverse
16  material facts and product intricacies making the deferred annuities far inferior to other available
17  investment products.

18     31.    Defendant represents through marketing materials, brochures, agent training guides
19  and other materials, that the deferred annuities are beneficial because the principal and the interest
20  they accrue is tax-deferred prior to withdrawal. After that deferral period, it is taxed at ordinary
21  income tax rates. This may be beneficial to an annuitant who is currently working and, therefore,
22  paying income tax. A deferred annuity does not typically benefit a senior citizen, however, because
23  they are already retired and, therefore, not paying as much in income taxes, if at all.

24     32.    Because deferred annuities are complex products and features are often
25  misunderstood by customers, with respect to seniors consumers, insurance companies are required
26  under California Insurance Code § 10127.13 to disclose all the terms of the surrender provisions in
27  bold 12-point font on the cover page or policy jacket. However, on information and belief,
28  Defendant fails to comply with this requirement.

33.   Defendant's annuity contracts are also drafted so that the average person cannot readily understand the terms. In addition, Defendant omits or fails to disclose provisions, disclosures or product features that would typically adversely affect consumers.

34.   Senior consumers, in part, are an ideal target for Defendant's illegal, unfair and deceptive business practices and are particularly susceptible to this conduct. Many seniors have a diminished ability to understand complex investment transactions, harbor concerns about risky investments and fear outliving their assets.

35.   To perpetrate its illegal, unfair and deceptive business practices, Defendant omits or fails to fully or adequately disclose critical information about the attributes and true risks of American National deferred annuity products, which if disclosed, would reveal that American National deferred annuities are inferior to comparable investment products. Among other material facts, Defendant either fails to disclose altogether or inadequately discloses and obscures that:

(a)   American National deferred annuities are worth substantially less than the purchaser's original invested funds and, as a result, Class Members who purchase American National deferred annuities lose substantial value on the date of purchase; Class Members who purchase American National deferred annuities lose a portion of their investment dollars to cover sales agents' commissions, American National's profits, investment goals and other undisclosed expenses;

(b)   American National pays commissions to its Agents that greatly exceed commissions paid on mutual funds or more liquid and higher-yielding investments; American National recoups these exorbitant commission costs from Class Members through undisclosed actuarial and accounting manipulations that adversely impact the performance of the annuities;

(c)   The effective cost of owning an American National deferred annuity is far higher than the costs associated with readily available alternative investments. Because American National does not disclose the true effective cost of owning an American National deferred annuity that is analogous to the fully disclosed annual expense ratios of a mutual fund or the annual expenses of a variable annuity, Class Members are unable to understand the risks, costs and minimal benefits of the American National deferred annuities;

1          (d)    The American National deferred annuities have stiff surrender charges that are

2   inadequately disclosed in American National's consumer brochures and annuity contracts;

3          (e)    American National pays purchasers of equity-indexed annuities only a fraction

4   of the individual gains in the indexed markets. American National fails to meaningfully disclose the

5   manner in which the inadequately disclosed caps and index margins interact with changes in the

6   market indices to determine the actual returns to Class Members;

7          (f)    Future performance of American National deferred annuities is dependent on

8   American National's ability to collect early annuitization penalties and surrender charges;

9          (g)    American National utilizes discretion and/or has the ability to penalize Class

10  Members electing early annuitization, even if the Class Members complied with the penalty-free

11  restrictions disclosed by American National;

12         (h)    American National's deferred annuities carry front-end and/or back end loads

13  resulting from undisclosed bonus forfeiture policies, unduly steep early surrender charges and bonus

14  forfeitures;

15         (i)    American National retains discretion over the annuity owner's earnings,

16  which is inadequately disclosed or concealed by indecipherable formulas buried in the annuity

17  contract;

18         (j)    The American National  annuity bonuses are illusory because American

19  National recoups those bonuses through higher surrender charges, longer surrender periods, and

20  reduced interest charges, caps or participation rates;

21         (k)    American National concealed fees and loads through indecipherable product

22  design and mechanics;

23         (l)    American National's death benefit, settlement and/or annuitization provisions

24  are indecipherable and/or discretionary;

25         (m)    American National annuity policies fail to properly explain the calculation of

26  index credits, and fail to explain that the annuitant's investment might not grow in value in any given

27  year.

28

1     (n)    American National's minimum guaranteed interest rate and initial interest rate
2   provisions are indecipherable and/or discretionary; and/or

3     (o)    Other more liquid and lucrative investments existed with less initial loss
4   andequal risk protection if held for the same period of time as American National policy owners are
5   required to hold American National policies to avoid surrender penalties that effectively reduce the
6   principal investment.

7     36.    Defendant's deferred annuity contracts also obscure and hide penalty provisions by,
8   *inter alia*, the use of misleading headings, indistinguishable text characteristics, confusing verbiage,
9   inconsistent and ambiguous definitions, and "chain" provisions requiring the reader to refer from one
10  provision to another provision.

11    37.    Additionally, at no time are consumers ever told about the extraordinarily high
12  commissions and performance bonuses Defendant pays its Agents, *e.g.*, the top sales producers
13  receive cash bonuses and other perks. These conflicts of interest are universally omitted or not
14  disclosed by Defendant in all annuity transactions.

15    38.    The material facts listed in previous paragraphs were not disclosed to Plaintiff or
16  potential Class Members because of the stringent control that Defendant maintains over marketing
17  materials and sales presentations made by its Agents. To effectuate deferred annuity sales,
18  Defendant requires its Agents to review standardized documents and marketing materials, which
19  were created, disseminated, and/or approved by Defendant. On information and belief, Defendant
20  further exerts control over its Agents and sales presentations by requiring marketing organizations
21  and Agents to submit any advertising, sales, or seminar material not developed by Defendant to
22  American National for review and approval prior to use.

23    39.    Despite exercising reasonable diligence, Plaintiff and the Class could not discover,
24  and were prevented from discovering, the above instances of Defendant's wrongdoing. The
25  standardized annuity contracts and marketing and sales materials prepared, approved, and
26  disseminated by Defendant to Plaintiff and the Class were deceptive and omitted the above-
27  referenced material information and/or contained insufficient disclosure of the Defendant's true
28  deferred annuity products and sales practices. Without disclosure of the foregoing material facts and

1 information, these annuity contracts and marketing materials were inherently misleading and
2 deceptive, and not subject to discovery by Plaintiff and the Class.

3 **PLAINTIFF'S TRANSACTION**

4    40.    On or about February of 2005, Plaintiff became a victim of Defendant's illegal, unfair
5 and deceptive business practices when she was solicited by a licensed American National agent and
6 was sold a deferred annuity policy issued by American National for $50,000, policy number
7 LAR0073387 (attached as Ex. 1). Upon issuance, Plaintiff received all documents related to this
8 policy. This policy would not mature until 2025, meaning that Ms. Rand would not receive *any*
9 payments on the annuity until she was *106 years old*, and if she attempted to surrender the policy
10 before she turned 96, she would have to pay surrender charges as high as 12% for the first year,
11 declining by 1% for the next nine years.

12    41.    On or about October of 2005, Ms. Rand was again solicited and was sold a deferred
13 annuity policy issued by American National. On this occasion, Ms. Rand purchased an American
14 National deferred annuity for $354,669, policy number LAR0074360 (attached as Ex. 2). Upon
15 issuance, Plaintiff received all documents related to this policy. This policy would not mature until
16 2025, meaning that Ms. Rand would not receive *any* payments on the annuity until she was *106*
17 *years old*, and if she attempted to surrender the policy before she turned 96, she would have to pay
18 surrender charges as high as 12% for the first year, declining by 1% for the next nine years.

19    42.    At no time did Defendant, through sales materials or marketing information or
20 through the American National agent adequately disclose to Ms. Rand the commissions that would
21 be earned from the sale of the annuity, nor did Defendant or the American National agent adequately
22 disclose in writing, or by any other means, the substantial surrender charges, maturity dates, fees or
23 other disadvantages of deferred annuities. Instead, Defendant omitted or failed to disclose these
24 material facts to Plaintiff.

25    43.    The written materials enumerated and described above, which were provided,
26 approved and/or disseminated by Defendant, omitted material facts as described in paragraph 23-38,
27 *supra*, and contained numerous other material omissions as described throughout this Complaint.

28

1

**DISCOVERY RULE AND EQUITABLE TOLLING**

2       44.     Plaintiff and other Class members did not know and could not reasonably have

3    known through reasonable diligence, of Defendant's illegal, unfair and deceptive business practices

4    and could not have reasonably discovered the omissions or non-disclosures of Defendant's

5    representations, advertising and similar documents until shortly before the filing of this Complaint.

6       45.     To this day, Defendant continues to omit or fail to fully disclose all material facts and

7    risks associated with the deferred annuity products from the Class and public alike. Throughout

8    this time period, Defendant fails to release or provide this material information in a way that Plaintiff

9    and/or Class members could have discovered their illegal, unfair and deceptive business practices.

10   Although the initial decisions to engage in these practices were made some time ago, Defendant has

11   continued with its illegal, unfair and deceptive business practices.

12      46.     Defendant has uniformly trained its agents and other representatives to omit or not to

13   disclose the material facts and risks associated with the deferred annuity products described herein.

14   Defendant did not disclose these material facts in any of its policies or sales and marketing materials

15   provided to Plaintiff and the Class.

16      47.     As a result of the foregoing, Plaintiff and the Class could not reasonably discover the

17   deceptive and anti-competitive practices and did not do so until just recently. For the reasons alleged

18   above, the vast majority of Class members still do not know that they have been and continue to be

19   injured by Defendant's conduct.

20      48.     Defendant's conduct is continuing in nature. There is a substantial nexus between the

21   current illegal, unfair and deceptive conduct and the misconduct prior to that time. The acts involve

22   the same type of illicit practices and are recurring, continuous events.

23      49.     The statute of limitations applicable to any claims that Plaintiff or other Class

24   members have brought or could bring as a result of the conduct alleged herein has been tolled as a

25   result, since Plaintiff and the Class did not and could not have discovered their causes of action until

26   recently, thereby tolling any applicable statute of limitations.

27                              **CLASS ACTION ALLEGATIONS**

28

1    50.    Plaintiff brings this action individually and on behalf of all persons as the Court may
2  determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil
3  Procedure 23(a) and 23(b). Plaintiff asserts class and representative claims against each Defendant
4  under California Business & Professions Code §§17203, 17204 and 17535. Plaintiff seeks to
5  represent a California class with regard to all claims. The proposed California class is defined as
6  follows:

7          (a)    All persons (or their beneficiaries) who were issued one or more American
8  National deferred annuity policies in the State of California, or who, within the applicable statute of
9  limitations, purchased or surrendered one or more American National deferred annuity policies ("the
10 Class" or "Class Members").

11   51.    Excluded from the Class are Defendant and their affiliates, predecessors, successors,
12 officers, directors, agents, servants, or employees, and the immediate family members of such
13 persons. Also excluded is any trial judge who may preside over this action.

14   52.    The members of the Class are so numerous that joinder of all members would be
15 impracticable. Plaintiff reasonably estimates that the Class members may number into the thousands
16 or even tens of thousands. The precise number of Class members and their addresses are unknown
17 to Plaintiff, but can be ascertained through appropriate discovery of Defendant's records. Class
18 members may be notified of the pendency of this action by publication and/or other notice.

19   53.    There is a well-defined community of interest in the relevant questions of law and
20 fact affecting putative Class members. Common questions of law and fact predominate over any
21 individual questions affecting Class members, including, but not limited to the following:

22         (a)    Whether Defendant improperly solicited, referred, marketed, issued or sold
23 deferred annuities to Plaintiff and the Class;

24         (b)    Whether Defendants committed unfair, unlawful and deceptive business
25 practices, in violation of Bus. & Prof. Code §17200, in their marketing, promotion, solicitation, sales
26 and issuance of deferred annuities to Plaintiff and Class members;

27         (c)    Whether Defendants engaged in deceptive advertising in violation of Bus. &
28 Prof. Code §17500;

1         (d)     Whether Defendants committed elder abuse as defined in Welf. & Inst. Code

2 §15600 *et seq.*;

3         (e)     Whether Defendant has been unjustly enriched at the expense of the Class;

4         (f)     Whether Plaintiff and members of the Class have sustained damages;

5         (g)     Whether Plaintiff and the Class are entitled to damages; and

6         (h)     Whether Plaintiff and the Class is entitled to injunctive, declaratory and/or

7 other relief.

8     54.     Plaintiff's claims are typical of those of the absent Class members. If brought and

9 prosecuted individually, the claims of each Class member would require proof of many of the same

10 material and substantive facts, rely upon the same remedial theories, and seek the same relief.

11     55.     The claims of Plaintiff and other Class members have a common origin and share a

12 common basis. The claims originate from the same wrongful conduct by Defendant, including its

13 illegal, unfair and deceptive conduct.

14     56.     Plaintiff's claims are sufficiently aligned with the interests of the absent members of

15 the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as

16 representative of the Class.

17     57.     Plaintiff will fairly and adequately protect the interests of the Class and has no

18 interests adverse to or that directly and irrevocably conflict with the interests of other Class

19 Members. Plaintiff is willing and prepared to serve the Court and the putative Class in a

20 representative capacity with all of the obligations and duties material thereto.

21     58.     Plaintiff is willing and prepared to serve the Court and proposed Class in a

22 representative capacity with all of the obligations and duties material thereto.

23     59.     Plaintiff has retained the services of counsel, identified below, who are experienced in

24 complex class-action litigation and, in particular, class actions involving insurance matters, who will

25 adequately prosecute this action, and will otherwise assert, protect and fairly and adequately

26 represent Plaintiff and all absent Class members.

27     60.     Class certification is appropriate under F.R.C. P. 23(b)(1), in that the prosecution of

28 separate actions by individual Class Members would create a risk of inconsistent or varying

1  adjudications, which would establish incompatible standards of conduct for the parties opposing the

2  Class. Such incompatible standards of conduct and varying adjudications on the same essential

3  facts, proof and legal theories would also create and allow the existence of inconsistent and

4  incompatible rights within the Class.

5      61.    Class certification is appropriate under F.R.C.P. 23(b)(2), in that Defendant has acted

6  or refused to act on grounds generally applicable to the Class, making final declaratory or injunctive

7  relief appropriate.

8      62.    Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions

9  of law and fact predominate over any questions affecting only individual Class Members.

10     63.    Moreover, a class action is superior to other methods for the fair and efficient

11  adjudication of the controversies raised in this Complaint because:

12          (a)    individual claims by the Class Members would be impracticable as the costs

13  of pursuit would far exceed what any one Class Member has at stake;

14          (b)    little individual litigation has been commenced over the controversies alleged

15  in this Complaint, and individual Class Members are unlikely to have an interest in separately

16  prosecuting and controlling individual actions;

17          (c)    the concentration of litigation of these claims in one forum will achieve

18  efficiency and promote judicial economy; and

19          (d)    the proposed Class action is manageable.

20     64.    Therefore, class treatment of Plaintiff's claims is appropriate and necessary.

21                              **COUNT I**

22              **Violation of California Business & Professions**
                        **Code §§17200 *et seq.***

23                          **(Against Defendant)**

24

25     65.    Plaintiff and the Class repeat and reallege all allegations contained in the Complaint

    as if set forth separately in this Cause of Action.

26

27

28

1  66.   California Business and Professions Code §17200 prohibits any "unlawful . . .
2  business act or practice." Defendant has violated §17200's prohibition against engaging in an
3  unlawful act or practice by, *inter alia*, the following:

4  (a)   violating California Business and Professions Code §17500 *et seq.* (as alleged
5  in the Second Cause of Action);

6  (b)   by omitting or failing to provide full, adequate disclosure of all material facts
7  and risks associated with the deferred annuity products, including but not limited to the risks
8  involved, surrender charges, undisclosed commissions and other consequences as set forth herein,
9  Defendant has violated Cal. Ins. Code §§ 330-334, 762, 780, 781, 10509, *et seq.*;

10  (c)   by failing to provide full or adequate disclosure that the deferred annuity sold
11  involves investment risk including the potential that principal may be lost and the product may
12  decline in value, Defendant has violated Cal. Ins. Code §§ 761-762;

13  (d)   violating Cal. Civ. Code §§ 1750, *et seq.*

14  (e)   violating California Welfare and Institutions Code §§15610.30 and 15657.5 *et*
15  *seq.* (as alleged in the Third Cause of Action);

16  (f)   by failing to conduct themselves with persons over the age of 65 in good faith,
17  honesty, and fair dealing, Defendant has violated Cal. Ins. Code §§ 785 *et seq.*;

18  (g)   by issuing or approving advertising that was deceptive or misleading about the
19  nature of their sales presentation of deferred annuities or failing to disclose leads, such as bank
20  tellers or sales agents, that generate contact with a person over the age of 65, Defendant has violated
21  Ins. Code §§ 787 *et seq.*;

22  (h)   by omitting or failing to provide full, adequate disclosure of all material facts
23  and risks associated with the deferred annuity products to persons over the age of 65, including
24  but not limited to the risks involved, surrender charges, undisclosed commissions and other
25  consequences as set forth herein, Defendant has violated Cal. Ins. Code §§ 789.8 *et seq.*, 10509, *et*
26  *seq.*;

27  (i)   by failing to provide full or adequate disclosure to a person over the age of 65
28  that the sale or liquidation of any stock, bond, IRA, certificate of deposit, mutual fund, annuity or

1    other asset to fund the purchase of the deferred annuity sold involves tax consequences, early

2    withdrawal penalties, investment risk, or other costs or penalties and should consult with a legal or

3    financial professional before purchasing, Defendant has violated Cal. Ins. Code §§ 789.8;

4                (j)       by failing to provide full or adequate disclosure that the deferred annuity sold

5    to a person over the age of 65 allows for an examination period of 30 days (at which time the

6    applicant may return/cancel the contract), Defendant has violated Cal. Ins. Code § 10127.10; and

7                (k)       by failing to provide full and adequate disclosure of information concerning a

8    deferred annuity's surrender charge period and penalties, Defendant has violated Cal. Ins. Code

9    § 10127.13.

10        67.    Plaintiff and the Class reserve the right to allege other violations of law which

11   constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this

12   day.

13        68.    California Business and Professions Code §17200 prohibits any "unfair . . . business

14   act or practice." As detailed in the preceding paragraphs, Defendant engages in a systematic scheme

15   to sell deferred annuities to Plaintiff and the Class, in violation of state and federal law and the

16   fundamental policies delineated in statutory provisions. Defendant gained the trust of Plaintiff and

17   the Class, had access to their financial information and induced them into purchasing deferred

18   annuities – omitting or without disclosing all material facts and risks associated with the deferred

19   annuity products. As a result, Defendant engages in unfair business practices prohibited by

20   California Business and Professions Code §17200 et seq.

21        69.    California Business and Professions Code §17200 prohibits any deceptive business

22   practice likely to deceive the public. As detailed in the preceding paragraphs, Defendant's conduct

23   was likely to deceive Plaintiff, the Class and the public by, inter alia, omitting or failing to disclose

24   all material facts and risks associated with the deferred annuity products, including, but not limited

25   to the disadvantages of purchasing a deferred annuity such as their the steep surrender charges and

26   lengthy maturation periods.

27        70.    Moreover, Defendant omitted information about the disadvantages of having a

28   deferred annuity, as well as information about the lack of access Plaintiff and the Class would have

1   to their annuity investments. Defendant also failed to disclose surrender charges; that the disclosed

2   rate of return was, in actuality, a "teaser rate" in effect only for the first month and that the rate of

3   return would dramatically reduce after the first month; and/or that the so-called "bonus" features

4   used by Defendant to lure elderly purchasers are rendered illusory by indecipherable forfeiture and

5   penalty provisions and, in fact, *acted as a financial burden,* rather than a valuable benefit.

6       71.     Defendant aided and abetted its co-conspirators in accomplishing the wrongful acts.

7   In doing so, Defendant acted with an awareness of their wrongdoing and realized that its conduct

8   would substantially assist the accomplishment of the wrongful conduct.

9       72.     As a result of Defendant's practice, Plaintiff and the Class have suffered injury-in-

10  fact, including but not limited to, incurring financial losses, including access to needed funds,

11  unnecessary and concealed fees and penalties, undisclosed commissions, charges (including

12  surrender charges) and penalties that she and Class Members would not have otherwise incurred.

13      73.     Unless Defendant is enjoined from continuing to engage in the unlawful, deceptive

14  and unfair business practices described above, members of the general public residing within the

15  United States, including California, will continue to be damaged.

16      74.     Pursuant to California Business and Professions Code §17203, Plaintiff seeks an

17  order requiring Defendant to immediately cease such acts of unlawful, unfair and deceptive business

18  practices and requiring them to return the full amount of money improperly collected – including,

19  but not limited to, commissions and profits from the sale of annuities, income derived from penalties

20  and fees – to all those who have paid them – plus interest and attorneys' fees.

21

22                              **COUNT II**

23          **Violation of California Business & Professions**
            **Code §17500 *et seq.***

24                          **(Against Defendant)**

25      75.     Plaintiff and the Class repeat and reallege all allegations contained in the Complaint

26  as if set forth separately in this Cause of Action.

27      76.     Defendant has issued, ratified and/or approved misleading or deceptive

28  advertisements that directly or indirectly consumers into purchasing deferred annuity products.

                                    - 19 -

1   Letters, postcards, marketing materials and advertising websites prepared by Defendant, as well as
2   those prepared by its Agents and then ratified and/or approved by Defendant, are tailored to attract
3   consumers into purchasing its deferred annuity products.

4       77.   Defendant has ratified, approved and/or turned a blind eye towards, the issuance of
5   deceptive or misleading advertisements representing its Agents are certified financial planners and
6   other bona fide service providers, without also disclosing that they are insurance agents and brokers
7   who sell insurance for American National and receive compensation therefor.

8       78.   Defendant has issued, ratified and/or approved misleading or deceptive marketing
9   materials and advertisements about the deferred annuity policies that they sell.

10      79.   Defendant omitted or failed to disclose to Plaintiff, the Class or the general public that
11  deferred annuities may be inappropriate investments for consumers, instead providing virtually
12  uniform messages that annuities are perfect investments for consumers.

13      80.   In making and disseminating these statements and advertisements, Defendant knew or
14  should have known that they were deceptive or misleading.

15      81.   Defendant had or should have approved all of its Agents' advertisements and
16  marketing materials, and are, therefore, liable for such deceptive or misleading advertisements even
17  if it did not issue them directly.

18      82.   Defendant aided and abetted its co-conspirators in accomplishing the wrongful acts.
19  In doing so, Defendant acted with awareness of its misconduct and knew that its conduct would
20  substantially further the wrongful conduct.

21      83.   As a result of Defendant's misconduct as alleged herein, Plaintiff and the Class have
22  incurred actual financial losses and damages, including, but not limited to, penalties, fees, charges
23  and deductions as a result of following the advice and recommendations of Defendant, fees and
24  charges for the purchase of inappropriate financial products and taxes, assessments and penalties
25  they would not have otherwise incurred but for reliance on Defendant's advice and
26  recommendations.

27

28

84.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff, the Class and the general public have suffered injury-in-fact, including, but not limited to, monetary and non-monetary damages.

85.     Unless Defendant is enjoined from continuing to engage in such wrongful actions and conduct, members of the general public will continue to be damaged by Defendant's deceptive and misleading advertising.

86.     So as not to be unjustly enriched by its own wrongful actions and conduct, Defendant should be required to disgorge and restore to Plaintiff, members of the Class, and the general public, all monies wrongfully obtained by Defendant as a result of their deceptive and misleading advertising, along with interest.

## COUNT III

### Financial Elder Abuse, California Welfare & Institutions Code §15600 *et seq.*

### (Against Defendant)

87.     Plaintiff and the Class repeat and reallege all allegations contained in the Complaint as if set forth separately in this Cause of Action.

88.     Defendant's conduct constitutes financial abuse under California Welfare and Institutions Code §15657.5 *et seq.*, as defined in California Welfare and Institutions Code §15610.30. Section 15610.30(a) provides in relevant part:

(a)     "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(i)     Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

(ii)     Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

89.     At all relevant times, Defendant took and/or assisted in the taking of property from Plaintiff and the Class (who are all 65 or older) for their own wrongful use. Plaintiff and other senior members of the Class trusted and relied on Defendant.

1        90.     Defendant induced Plaintiff and other senior members of the Class into purchasing

2 deferred annuities.

3        91.     In doing so, Defendant acted with an awareness of its wrongdoing and realized that

4 their conduct would substantially assist the accomplishment of the wrongful conduct.

5        92.     Defendant aided and abetted its co-conspirators in accomplishing the wrongful acts.

6 In doing so, Defendant acted with awareness of its misconduct and knew that its conduct would

7 substantially further the wrongful conduct.

8        93.     Defendant's conduct was reckless and/or oppressive within the meaning of California

9 Welfare and Institutions Code § 15657.5 *et seq.*

10        94.     Under California Welfare and Institutions Code §15657.5 *et seq.*, Defendant are liable

11 for reasonable attorneys' fees and costs for investigating and litigating this claim.

12        95.     Under California Civil Code §3294 and California Welfare and Institutions Code

13 §15657.05(a), Defendant is liable for punitive damages.

14        96.     Under California Civil Code §3345, Defendant is liable for treble damages and

15 penalties because: (a) Defendant knew or should have known its conduct was directed to a senior

16 citizen; (b) its conduct caused a senior citizen to suffer substantial loss of property set aside for

17 retirement, and assets essential to their health and welfare; (c) Plaintiff and other senior members of

18 the Class are senior citizens who are more vulnerable than others to Defendant's conduct because of

19 their age, impaired understanding, impaired health or restricted mobility and (d) Plaintiff and other

20 senior members of the Class actually suffered substantial physical, emotional and economic damages

21 resulting from Defendant's conduct.

22        97.     Under California Welfare and Institutions Code §§15657.5 *et seq.*, Defendant is liable

23 to Plaintiff and the senior members of the Class for their pain and suffering.

24                                   **PRAYER FOR RELIEF**

25        WHEREFORE, Plaintiff, on behalf of herself, the Class, and the general public, prays for

26 judgment against Defendant as follows:

27        A.     An order certifying this action as a Plaintiff class action under Rule 23 of the Federal

28 Rules of Civil Procedure as set forth herein;

1      B.     For a temporary, preliminary and permanent order for injunctive relief enjoining

2 Defendant from pursuing the practices complained of above;

3      C.     For a temporary, preliminary and permanent order for injunctive relief requiring

4 Defendant to undertake an immediate public information campaign to inform members of the

5 general public as to their prior practices and notifying the members of the proposed Class of the

6 potential for restitutionary relief;

7      D.     For an order requiring disgorgement and restitution of Defendant's ill-gotten gains

8 and to pay restitution to Plaintiff, the Class, and the general public all funds acquired by means of

9 any practice declared by this Court to be unlawful, deceptive or unfair;

10      E.     For compensatory, special and general damages according to proof and as the Court

11 deems just and proper;

12      F.     Assuming certification of the Class pursuant to Rule 23 of the Federal Rules of Civil

13 Procedure, for distribution of any moneys recovered on behalf of the general public, or the Class, via

14 fluid recovery or *cy pres* recovery where necessary to prevent Defendant from retaining any of the

15 profits or benefits of their wrongful conduct;

16      G.     For punitive and exemplary damages under Welf. & Inst. Code §15657(a), Civil Code

17 §1780(a)(4), Civil Code §3294; and as to counts for which they are available under the applicable

18 law in such amount as the Court deems just and proper;

19      H.     For treble damages and penalties under Civil Code §3345; Bus. & Prof. Code §§6153,

20 6175.4, 6175.5 and 17206.1; and Ins. Code §789; and as to counts for which they are available under

21 the applicable law in such amount as the Court deems just and proper;

22      I.     For double damages under Probate Code §859; and as to counts for which they are

23 available under the applicable law in such amount as the Court deems just and proper;

24      J.     For transfer of the wrongfully obtained monies and/or property under Probate Code

25 §§850-859 *et seq.*;

26      K.     Imposition of a constructive trust, an Order granting recessionary and injunctive relief

27 and/or such other equitable relief, including restitution, disgorgement of ill-gotten profits and an

28

1  order requiring Defendants to provide corrective notice to Class Members as set forth herein and as

2  the Court deems just and proper;

3      L.      An appropriate claims resolution facility to administer the relief in this case;

4      M.      For reasonable attorneys' fees and costs of investigation and litigation under, among

5  other statutes, C.C.P. §1021.5; Welf. & Inst. Code §§15657.05 *et seq.*, 15657.5 *et seq.*; C.C.P.

6  § 2033, *et seq.*; and Civil Code §1780(d) or the common fund doctrine;

7      N.      For costs of lawsuit, pre-judgment, and post-judgment interest; and

8      O.      Such other and further relief as the Court may deem necessary or appropriate.

9                              **JURY DEMAND**

10     Plaintiff and the Class hereby demand a trial by jury.

11 Dated: February  /2 , 2009

12                  WATERS KRAUS & PAUL LLP
                    INGRID M. EVANS
13                  DAVID L. CHENG

14                  By: *Ingrid M. Evans by DLC with permission*
                        INGRID M. EVANS
15
                    601 Van Ness Avenue, Suite 2080
16                  San Francisco, CA 94102
                    Telephone: 415/296-6060
17                  214/777-0470 (fax)

18                  WATERS KRAUS & PAUL LLP
                    CHARLES S. SIEGEL (*Pro Hac Vice application to be submitted*)
19                  csiegel@waterskraus.com
                    3219 McKinney Avenue
20                  Dallas, TX 75204
                    Telephone: 214/357-6244
21                  214/357-7252 (fax)

22                  BONNETT, FAIRBOURN, FRIEDMAN & BALINT P.C.
                    ANDREW S. FRIEDMAN (*Pro Hac Vice* application to be
23                  submitted)
                    afriedman@bffb.com
24                  2901 N. Central Avenue, Suite 1000
                    Phoenix, AZ 85012
25                  Telephone: 602/274-1100
                    602/274-1199 (fax)
26

27

28

                            - 24 -

1

2     COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
3     JOHN J. STOIA, JR. (141757)
      johns@csgrr.com
4     655 West Broadway, Suite 1900
      San Diego, CA 92101
5     Telephone: 619/231-1058
      619/231-7423 (fax)

6     BARRACK RODOS & BACINE LLP
      STEPHEN R. BASSER (121590)
7     sbasser@barrack.com
      600 West Broadway, Suite 900
8     San Diego, CA 92101
      Telephone: 619/230-0800
9     619/230-1874 (fax)

10
      Attorneys for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint